UNITED STATES *v.* McGRAW.   (No. 664.,

UNITED STATES *v.* MESERVEY and another.   (No. 665.)

UNITED STATES *v.* TICHENOR and others.   (No. 666.)

*(Circuit Court, D. Oregon.   June, 1882.)*

1. **PUBLIC LAND—SUITS TO ANNUL PATENTS—INSUFFICIENT ALLEGATIONS.**

   In a suit by plaintiff to annul certain patents issued by it to defendants on the ground that they were issued contrary to law, and in fraud of the rights of plaintiff, because the lands included therein were a part of a "military reservation" lawfully established at Port Orford prior thereto, and which was known to defendants prior to entry upon the same, the allegation of fraud is insufficient, as it was not the duty of defendants to inform the officers of the plaintiff that these lands had been lawfully reserved from sale, even if such was the case.

2. **RESERVATION OF LAND FROM SALE—AUTHORITY TO MAKE.**

   Where it does not appear that any reservation was ever made by the authority of the president, and it does appear that the alleged reservation included more than 200 acres, while the law since February 14, 1853, limited the amount which might be reserved at one place for any purpose other than a "fort" to 20 acres; and while a reservation of 640 acres might lawfully have been made for a "fort," but it does not appear that a "fort" was ever established at Port Orford—no reservation was in fact lawfully established.

3. **SAME—VOID RESERVATION.**

   The alleged order of the secretary of war, by which it was directed that the "post" at Port Orford be made permanent according to previous action, signifies that it related to the "post" and not to a reservation, and the object seems to have been not to make or ratify a reservation at Port Orford, but to direct that the "post" be "made permanent;" and if such order was intended to establish a reservation, it was void—*First*, because it did not prescribe its boundaries of limit as required by law; *second*, because it contained over 200 acres, the reservation for the purpose of a "post" being limited to 20 acres; and, *third*, it is void as to defendants' land in controversy because they were purchased before the order was made.

4. **CONGRESS—POWER TO DISPOSE OF LAND—LACHES—SUIT DISMISSED.**

   Congress alone has the power to dispose of the public lands, and where by its authority the premises in controversy were lawfully sold to the grantees in the patents in controversy, and there is no proof that the authority conferred upon the president has been exercised, so as to take these lands out of the general provisions made by congress for their sale and disposition to private persons and uses, and where it appears that plaintiff has been guilty of laches in the assertion of its claims, the equitable defence of lapse of time is well pleaded, and, the bills being without equity, demurrer thereto is sustained and the bills dismissed.

In Equity.   Suits to annul a patent.

*Rufus Mallory,* for plaintiff.

*Edward W. McGraw,* for defendants.

DEADY, D. J. These three suits were commenced on September 13, 1880, and heard and submitted on demurrer with the case of the *U. S.* v. *Tichenor, ante,* 415, and the statement and opinion in that case is largely applicable to these. They are brought to set aside and cancel four patents issued to the defendants for lands situate in Curry county, Oregon, and being parts of sections 5, 6, 7, and 8, of township 33 south, of range 15 west of the Wallamet meridian, containing in the aggregate about 255.49 acres, as follows: To Jacob B. Tichenor, two patents, each dated October 20, 1864, the one for lot numbered 3 in said section 5, and the other for lots 3 and 4 of said section 6, lot 1 of said section 7, and lot 1 of said section 8, containing altogether 74.01 acres; to Elisha H. Meservey, one patent for the W. ½ of the S. W. ¼, the N. W. ¼ of the S. W. ¼, the fractional N. W. ¼ of the S. E. ¼ west of the donation survey of William Tichenor, and the water lots 4 and 5 of said section 5, containing 165.34 acres; and to Edward W. McGraw, one patent for lots 1 and 2 of said section 6, containing 13.64 acres,—upon the ground that said patents and the entries upon which they issued were allowed and issued contrary to law and in fraud of the rights of the plaintiff, because the lands included therein were a part of a "military reservation" lawfully established at Port Orford prior thereto, all of which was known to the defendants prior to such entries.

The bills each allege the establishment of "a military reservation" at Port Orford in 1851, as in the case of William Tichenor, No. 660, except the giving of the alleged quitclaims by him and his wife, and the erection and occupation of a military post there from 1851 to 1856, and its abandonment and temporary reoccupation in 1864, and the arrest and imprisonment of said Tichenor and his son, the defendant, Jacob B. Tichenor, as in that case; and, in addition, that on March 30, 1864, the secretary of war ordered that the "post at Port Orford be made permanent according to previous action."

The allegation in regard to the reservation for light-house purposes is omitted. The description of the alleged reservation, of which only so much is given in the William Tichenor case as was necessary to locate the portion said to be within his donation, is as follows:

"Beginning at a point where the east line of Redwood street, in the town of Port Orford, in the county of Curry, Oregon, prolonged, strikes the south line of the donation land claim of William Tichenor and wife; thence along

said prolonged line and its continuation to east side of Redwood street in said town of Port Orford; thence along the south line of Third street and said line continued until it strikes the west line of said Tichenor's said claim; thence in a north-westerly direction to the sea; thence southerly following the sea to the place of beginning."

It also appears from the certified copies of said patents and the entries upon which they were issued, and also an extract from the proclamation of the president, No. 685, that on May 2, 1862, the lands in said sections 5, 6, 7, and 8, except those "appropriated by law for the use of schools, military and other purposes, or claimed under the donation laws", were proclaimed for sale at the land-office at Roseburg, Oregon, on October 13, 1862, for a period not exceeding two weeks, after which those remaining unsold were to be subject to private entry; that the lands patented to the defendants, as above stated, were purchased by them at the rate of $1.25 per acre at said land-office, as follows: By Meservey, on September 25, 1862, upon a declaratory statement filed under the pre-emption law of May 9, 1862, and proof of compliance with said law, and the payment of $206.67; by Jacob B. Tichenor, upon cash entries, lot 3, in section 5, on May 2, 1863, and the remainder on July 7, 1863, and the payment of $92.52; by Edward W. McGraw, on a cash entry on July 18, 1871, and the payment of $23.30; and that patents were issued upon these several entries, to the parties making then, as above stated.

Meservey and Tichenor answered the bills exhibited against them respectively, admitting the purchase of the lands by them as stated, and the issuing of the patents therefor, and averred that they had since sold and conveyed the same as follows: Meservey to George Dart on January 31, 1863, for the sum of $500; Tichenor to Sarah E. Tichenor, now Sarah E. McGraw, long prior to the commencement of the suit against him for the sum of five dollars,—which deeds were duly recorded, the first-mentioned one on February 2, 1863, and the second one prior to 1870; and deny that they ever had any knowledge that said lands were ever claimed as a reservation by the United States or were not subject to private entry, and disclaim all interest in the premises since said sales and conveyances.

Thereupon the plaintiff filed an amended bill in each of these two cases, making said Dart a party defendant in Meservey's case, (No. 665,) and said Sarah E. McGraw and her husband, Edward W. McGraw, parties defendant in Jacob B. Tichenor's case, (No. 666.) To these amended bills and the original bill in Edward W. McGraw's

case (No. 664) the defendants demurred, assigning substantially the same causes of demurrer in each case as in Tichenor's case, (No. 660,) and in addition thereto that it appears from each bill:

(1) That the plaintiff surveyed the lands in question and offered them for sale at auction, and, in default of bidders, offered them to the defendant at $1.25 an acre, who purchased them acccordingly. (2) It does not appear that the defendant was guilty of any false representation or fraudulent conceal-ment in connection with such sale. (3) It does not appear that the plaintiff has tendered to the defendant, or now offers to repay him, the money received for said lands. (4) It does not appear that the plaintiff has demanded a reconveyance of the premises.

The allegation of fraud is insufficient, and, in the nature of things, it cannot be made better. It was not the duty of the defendants to inform the officers of the United States that these lands had been lawfully reserved from sale, even if such was the case. But it was the duty of the plaintiff, through its proper officers, to know the con-dition of its lands in this respect, and act accordingly. Neither is the question of fraud a material one; for the plaintiff is not bound by the acts of its officers in the disposition of these lands if they acted, as is claimed, without authority of law. As to whether these lands were open to entry, the defendants took the risk,—purchased at their peril,—and if, being lawfully reserved, they were not subject to sale, the disposition of them by the officers of the land-office, being a mat-ter beyond their jurisdiction, was void, without reference to the knowl-edge or motives of the defendants in making the purchase. *Wilcox* v. *Jackson*, 13 Pet. 511.

The only ground, then, upon which these suits can be maintained is that the lands in question had been lawfully reserved from entry by authority of the president before their sale to the defendants. If such a reservation did not exist, the lands were subject to sale, and the purchase of the defendants was lawful and valid. Therefore, the rules invoked by counsel for the defendants as applicable to a suit for the rescission of a contract within the power of the parties to make, but procured by the fraud of one of them,—as that the court will not interfere unless the parties can be placed *in statu quo;* that notice of the rescission must be given within a reasonable time, ac-companied by an offer to return whatever of value has been received under the contract,—are not in point. And yet it may be that even in a case of a void contract or sale, as this is alleged to be, that the court would not annul the patent if it appeared that the vendor was negligent and the purchaser acted in good faith, without provid-

ing that the decree should not take effect until the purchase money was returned to him. But if it appeared that the purchaser had good reason to believe that the sale was not authorized by law, it would be proper to annul the patent and leave him to the mercy of congress for the purchase money.

Upon the question of whether there ever was a lawful reservation at Port Orford for any purpose, the facts in these cases are not any more favorable to the plaintiff's claim than in the Tichenor case. It does not appear that any reservation was ever made by the authority of the president. It does appear that the alleged reservation included more than 200 acres, while the law since February 14, 1853, limited the amount which might be reserved at one place for any purpose other than a "fort" to 20 acres. And while a reservation of 640 acres might lawfully have been made for a "fort," it does not appear that a "fort" was ever established at Port Orford, but only a temporary camp or unfortified post, which was abandoned as early as September, 1856, and never after actually occupied except for a very short time in 1864, for some temporary and non-military purpose.

The alleged order of the secretary of war of March 30, 1864, by which it was directed that the *"post* at Port Orford be made permanent according to previous action," is the only new fact on this point in these cases. This order implies, as the fact was, that the post had fallen into disuse; and in all probability it was procured in aid of the person who was then occupying the old buildings, nominally as agent of the government, but really for the purpose of his private trade and business, and against the will of the apparent owner,— William Tichenor,—out of which controversy grew the subsequent illegal imprisonment of the latter by the military, in the interest of this same party. But waiving this, and presuming that this order of the secretary was made by the direction of the president, what does it signify? And, *first*, it related to the "post" and not a reservation, and the object seems to have been, not to make or ratify a reservation at Port Orford, but to direct that the post be "made permanent," —whatever that is,—a direction which seems to have been generally disregarded. The "post," as has been said, was a mere collection of log-houses in the town of Port Orford, and not upon any of these lands. But if the order was intended to establish a reservation at Port Orford, it was void, because (1) it did not prescribe its boundaries or limit the amount, as required by law; (2) if it was intended by the words "according to previous action" to have effect as a ratification of the reservation alleged to have been "mapped out" by

Wyman in 1851, it was void, because it contained over 200 acres, while a reservation for the purpose of a "post" was limited to 20 acres; and (3) it is certainly void as to the lands entered by Meservey and Tichenor,—239.35 acres, and twelve-thirteenths of the quantity in controversy,—because they were purchased before the order was made.

Congress alone has the power to dispose of the public lands, and by its authority the premises in controversy were lawfully sold to the grantees on these patents, unless before such sale they were legally designated under the authority conferred upon the president by section 14 of the donation act, and section 9 of the act amendatory thereof, (9 St. 500; 10 St. 159,) as a reservation for some of the "public uses" mentioned in said sections, and in conformity with the restrictions imposed upon said authority by said section 9.

To entitle the plaintiff to the relief sought it must prove that this authority has been exercised so as to take these lands out of the general provision made by congress for their sale and disposition to private persons and uses. Upon the facts stated, and all legal and reasonable inferences that may be drawn from them, it does not appear that there ever was a valid reservation at Port Orford, or that there ever was an attempt to designate one by the authority of the president. The plaintiff has also been guilty of laches in the assertion of these claims, and an equitable defence of lapse of time may well be allowed in these suits.

The demurrers are sustained, and the claims of the plaintiff being stale and the bills without equity they are each dismissed.

See Same parties, *ante*, 415, and note. See, also, *U. S.* v. *Mullan*, 10 FED. REP. 785; *Leavenworth, etc., R. Co.* v. *U. S.*, 92 U. S. 733.